United States v. Titus. Mr. Beal. May it please the court. Wilson Titus wanted an opportunity to show that he was responsible for three and only three fraudulent mortgages in this case. The government wanted an opportunity to show that he was responsible for 18. Indeed the prosecutor told the judge, Your Honor, we have 18 properties on our loss chart. I can hand the chart up to the court and we can begin going through them. And I said, Judge, we're prepared to respond, meaning to each and every property. But the court gave either side the opportunity to address any of the properties and there was very little information in the record on any of the properties beyond the three that Mr. Titus acknowledged responsibility for. But at that point the judge, Judge Norgle, arbitrarily said, I'm going to hold Mr. Titus responsible for eight properties. He didn't identify which eight they were. He never stated a loss amount. And then on top of that, having said, okay, he's responsible for eight properties, I'm going to use the guidelines for the government's 18 properties. And he never made any connection between the guidelines for 18 properties and the eight properties that he explicitly and clearly stated that he was holding Mr. Titus responsible for. So we submit that the judge committed procedural error because there's no way for this court to figure out why and how Judge Norgle did what he did. The government makes a suggestion in its brief that he didn't include relevant conduct, that it was eight properties plus relevant conduct. But the judge's statements clearly show that that's not true. When he made his finding, he said he's rejecting, this is on page 11 of the transcript of the sentencing hearing, with respect to the number of properties, the court rejects the argument that the defendant's only responsible for three. Even the most conservative view of this matter is he's responsible for another five. The government's position is 18 in the subset, perhaps another 20. But the idea that Mr. Titus should be held accountable within the context of the conspiracy for only three is rejected. He recognizes the government thought it was 18 and says no, it's eight in the context, and he uses conspiracy and relevant conduct sort of interchangeably during the hearing. So the government's contention that the this issue of the number of properties doesn't just affect the guideline numbers, it also affects the 3553 analysis, because the judge imposed sentence without understanding Mr. Titus's role in the case, not giving him an opportunity to explain his role in the case. So as a result of all this and also because of his view or lack of an informed view of Mr. Titus's role in the case, he was skeptical of Mr. Titus's acceptance of responsibility and his allocution, where Mr. Titus readily accepted responsibility for the three properties, but really didn't accept responsibility for the other five. And Mr. Titus was prejudiced by all this because if we had had a hearing on the 18 properties and he'd been held responsible for only three, there would have been a lower guideline range, the judge would have understood his role more clearly, and he would have given him more credit for acceptance of responsibility. So we asked the court to find that Judge Norville committed procedural error in not having a hearing on the properties, acting arbitrarily in picking the eight properties, we asked the court to vacate the sentence and remand for a full resentencing. Okay, thank you Mr. Beal. Mr. Bendy? Good morning, may it please the court. The district court adopted the government's guideline calculation that the offense level was level 26 in this case, and that's consistent with the government's calculation, it's also consistent with the probation officer's calculation, and it's based on the argument, the contention of both, that the defendant was responsible for losses stemming from 18 properties that were involved in this mortgage fraud scheme. I don't understand I don't understand what Judge Norville thought he was doing. You say 18, and Judge Norville said at least eight, but where do you get the figure eight from? Well, the figure 18 comes from the government's... Yes, I know, but he didn't use 18, he used eight. Now, where did the eight come from? He meant teen, but he left it out. He said at least another five. But where did he find them? What were the five? He didn't specify what the other five were. Well, how do we know he was thinking? Well, it's our contention that what the judge was saying when he said that the defendant is responsible for at least another five properties, it was by way of saying that the defendant's contention that he's only responsible for three is clearly without merit in the judge's mind. Don't you think we ought to send it back down and let the judge explain what he meant? Well, it's our contention that the judge, in making the findings that he did... It's clear to you, you mean? Why didn't you ask the judge which five? Well, the judge made the finding that the offense level was 26, and that's based on... You were already in a role, you didn't want to interrupt him, yeah, I know. So that's the government's position, is that the judge... But the problem is we don't, we can't reconstruct Judge Norgel's reasoning process. We don't know what he based that number five on. I can't say what the judge based that number five on. Why didn't he ask him at the hearing? Your Honor, I can't answer that either. I don't know why it wasn't asked at the hearing. It didn't occur to you at the moment? I mean, how can you, we can affirm a decision when we don't know what the basis of it is? Well, I think that it's evident from the record that the basis of the decision was 18 properties, because that's what the offense level calculation is based on, and what the guideline range was based on. And we think that... But he didn't make a finding that he was guilty of, you know, all 18 properties. He said at least eight. He said at least eight, and again... And we don't know where he got that number. I'm not sure where he got that number. It's not a matter of not being sure. You have no idea where he got that number. There's no suggestion of what, oh, he must have meant, you know, X, Y, Z, W, D. There's nothing in the record that specifies which properties, or that I can draw a line and say, okay, you know, here's where the other five fall on this side of a line. I don't know where that line is, and it's not clear from the record where that line is. The judge also, however, rejected the sophisticated means, or I'm sorry, accepted the government's argument that the sophisticated means adjustment applied, and that was based on the duration of the scheme and the defendant's... Why is that sophisticated? I don't understand. Well, the defendant... The scheme involved the recruiting of straw buyers and the acquisition of documentation... Well, but there was also the acquisition of documentation from the city, zoning certificates and water certificates that were necessary for the closings to go through. There was false documentation regarding repair work done on the properties. The defendant was involved in all of that. He admitted his involvement in all of that. And this, I think, contributes to the notion that the judge found that he was responsible for all of the 18 properties asserted by the government and the probation officer. No, no, the judge did not find that. It would be consistent with the judge's calculation of defense level. No, he said at least eight. He didn't say 18. He could easily have said 18. He didn't say 18. That's true, Your Honor. He didn't. But it's the government's contention that this record establishes or shows sufficiently that the judge adopted the government's calculation and the probation officer's calculation regarding loss. Don't we need to know, really, with some specificity, how many transactions were considered so that you can justify the enhancement on the gross loss? Isn't that why we need to have a remand here? Well, you know, the loss amount from the 18 properties was, the actual dollar figure was never really in dispute. It's a question, it was a question of how many properties, not how many dollars for 18 properties. Well, the PSR recommended that the loss amount be between two and a half and seven million. That's the range, correct. But to get to that range, don't we have to have a base of what transactions were considered, I guess? That's the math I'm concerned about. Okay, the probation officer in the PSR said that the officer had available a loss amount regarding, or lost figures regarding 12 of the 18 properties. And out of those 12, the dollar figure was $3.3 million, or somewhere in that neighborhood. The probation officer qualified that finding in the pre-sentence investigation report by saying that as additional information comes in regarding losses on other properties, that figure's going to go up. And then the government, in its sentencing memorandum, with the most complete loss information that it had available, said that the loss figure was, I think, the $3.7 million figure that was proposed there. And that's the figure that the district court... But that's so illogical. That figure is based on the 18. That's correct. How can a judge use a figure for 18 properties when all he said is that at least 8 of them were violations by this? Well, again, this gets back to our contention that in finding an offense level of 26, the judge was ruling that the government's assertion about 18 properties, the probation officer's concurrence in that was correct. Why would he say that? That would make this a different case. That's true. I don't understand why you or whoever the prosecutor was didn't say to the judge, well, judge, you know, we certainly agree with you about the $3.7 million, but that's based on 18 properties. And you said at least 8, well, which of course could be 18. So is that what you meant, that there was at least 8, but actually you agree that there were 18 because you used the $3.7 million figure? You could have asked him that. Your Honor, that could have been asked. And all I can say is that it wasn't, and that's not in the record. Okay, well, thank you, Mr. Benjamin. Thank you, Your Honor. Mr. Beale, do you have anything further? Yeah, I'll ask a question, Mr. Beale. Yes, the judge has a question. It seems to me Judge Norville gave a reasonable sentence in this case. Yes, except that it's the highest sentence in the case. This is an 8 or 10 defendant case, and Mr. Titus' sentence is higher than any other sentence. I understand, but against, I appreciate that. So Mr. Titus could be exposed to a little bit more going back, right? Yes, Mr. Titus is aware of that. That was really my inquiry, that he's aware of that. Okay. Okay, well, thank you very much to both counsel.